UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEM TRAN,<br>Petitioner,<br>v.<br>MARKWAYNE MULLIN, Secretary of the Department of Homeland Security, et al.,<br>Respondents. | Case No.: 26cv3385-LL-DEB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PETITION FOR WRIT OF HABEAS CORPUS UNDER 28 U.S.C. § 2241**<br><br>[ECF No. 1] |

Before the Court is Petitioner Kem Tran's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241. ECF No. 1 ("Pet."). Respondents filed a Return [ECF No. 4], and Petitioner filed a Traverse [ECF No. 5]. For the reasons set forth below, the Court **GRANTS IN PART AND DENIES IN PART** the Petition.

## I. BACKGROUND

Petitioner, a citizen of Vietnam, came to the United States as a child and refugee in 1981 and received legal permanent residence in 1982. Pet. at 2. After serving about thirty-one years in prison for criminal convictions, he was ordered removed to Vietnam on February 4, 2026. *Id.*; ECF No. 4 at 2–3. When both parties waived appeal, the removal order became final the day it was entered. ECF No. 4 at 3.

On June 3, 2026, Petitioner filed the instant Petition. Pet.

## II. LEGAL STANDARD

A district court may grant a writ of habeas corpus when a petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c); *Magana-Pizano v. I.N.S.*, 200 F.3d 603, 609 (9th Cir. 1999) ("28 U.S.C. § 2241 expressly permits the federal courts to grant writs of habeas corpus to aliens when those aliens are 'in custody in violation of the Constitution or laws or treaties of the United States.'"). In federal habeas proceedings, the petitioner bears the burden of proving his case by a preponderance of evidence. *Lambert v. Blodgett*, 393 F.3d 943, 970 n.16 (9th Cir. 2004); *Bellew v. Gunn*, 532 F.2d 1288, 1290 (9th Cir. 1976) (citations omitted).

## III. DISCUSSION

### A. *Zadvydas*

Petitioner contends that there is "no significant likelihood of removal in the reasonably foreseeable future" and he is therefore entitled to immediate release under *Zadvydas v. Davis*, 533 U.S. 678 (2001). Pet. at 2, 6–13. Respondents disagree. ECF No. 4 at 3–6.

When a noncitizen has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for up to ninety days pending the government's efforts to secure their removal. *See* 8 U.S.C. § 1231(a)(1)–(2). This ninety-day period is referred to as the "removal period." 8 U.S.C. § 1231(a)(1)(A). After the removal period, this statute "limits [a noncitizen's] post-removal-period detention to a period reasonably necessary to bring about that [noncitizen's] removal from the United States" and "does not permit indefinite detention." *Zadvydas*, 533 U.S. at 689. A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[ ] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If the petitioner satisfies their initial burden, then the burden shifts to the government to rebut that showing. *Id.* "[F]or detention to remain

reasonable, as the period of prior postremoval confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the noncitizen's release may be "conditioned on any of the various forms of supervised release that are appropriate in the circumstances." *Id.* at 700; *see* 8 U.S.C. § 1231(a)(3).

In Petitioner's case, the six-month period has just passed. His removal order became administratively final February 4, 2026, so the six-month period ended August 4, 2026. Thus, the Court finds Petitioner's current detention is no longer "presumptively reasonable." *See Kim Ho Ma v. Ashcroft*, 257 F.3d 1095, 1102 n.5 (9th Cir. 2001) ("[I]n *Zadvydas,* 121 S.Ct. at 2505, the Supreme Court read the statute to permit a 'presumptively reasonable' detention period of *six months* after a final order of removal—that is, *three months* after the statutory removal period has ended.").

Petitioner now has the initial burden of showing "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Zadvydas*, 533 U.S. at 701. "Good reason to believe does not place a burden upon the detainee to demonstrate no reasonably foreseeable, significant likelihood of removal or show that his detention is indefinite; it is something less than that." *Senor v. Barr*, 401 F. Supp. 3d 420, 430 (W.D.N.Y. 2019) (cleaned up) (citations omitted). However, Petitioner must offer more than "conclusory statements suggesting that he will not" be removed. *Andrade v. Gonzalez*, 459 F.3d 538, 543 (5th Cir. 2006); *Quassani v. Killian*, Case No. 2:17-cv-01678-APG-PAL, 2017 WL 3396506, at *2 (D. Nev. Aug. 4, 2017) (questioning "whether petitioner can meet his initial burden" given that he "has offered nothing more than conclusory statements with respect to the likelihood of his removal in the foreseeable future").

The Court finds Petitioner has met his burden to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." Vietnam

historically did not accept pre-1995 Vietnamese immigrants for deportation. *See Trinh v. Homan*, 466 F. Supp. 3d 1077, 1083 (C.D. Cal. 2020) (discussing the history of U.S.-Vietnam repatriation relations). In 2020, the United States and Vietnam entered into a Memorandum of Understanding (MOU) intended to help facilitate the acceptance of pre-1995 Vietnamese immigrants ordered removed from the United States. *Nguyen v. Scott*, 796 F. Supp. 3d 703, 714–15 (W.D. Wash. 2025) (discussing the 2020 MOU between the United States and Vietnam). However, even with the MOU, courts have found that "the process for procuring travel documents from Vietnam for pre-1995 immigrants continues to be uncertain and protracted," in large part because Vietnam has discretion to consider repatriation requests on a case-by-case basis. *Nguyen*, 796 F. Supp. 3d at 723; *see Hoac v. Becerra*, No. 2:25-CV-01740-DC-JDP, 2025 WL 1993771, at *4–5 (E.D. Cal. July 16, 2025). The Court finds this is sufficient to show "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."

The burden thus shifts to Respondents to "respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. Respondents contend that their travel document request for Petitioner was transmitted to Vietnam in early June and is currently pending issuance by Vietnam. ECF No. 4-2, Declaration of Edgar A. Olvera ("Olvera Decl."), ¶¶ 18–19. Respondents attest that "Vietnam accepts repatriation of its nationals from the United States irrespective of their date of entry," including for people like Petitioner who have criminal records or require removal on special high-risk charter fights. *Id.* ¶¶ 21–23. Respondents further attest that ninety-nine Vietnamese nationals were removed on a special high-risk charter flight in June 2026. *Id.* ¶ 22. They also state that the San Diego Field Office recently arranged a travel document request to Vietnam for an aggravated felon who entered the United States prior to 1995, and it was issued within a month and a half. *Id.* ¶ 23.

The Court finds Respondents have sufficiently rebutted the showing. Petitioner's travel document is currently pending issuance by Vietnam. Vietnamese citizens who arrived before 1995 have been granted travel documents by Vietnam. This includes people

who require high-risk transportation or who have a criminal record. As recently as two months ago, a high-risk removal flight with a significant number of Vietnamese citizens left for Vietnam. Therefore, the Court finds that Respondents have rebutted the showing that Petitioner's removal is not reasonably foreseeable, and his detention is not currently unconstitutional. *See Zadvydas*, 533 U.S. at 701 ("This 6–month presumption, of course, does not mean that every alien not removed must be released after six months. To the contrary, an alien may be held in confinement until it has been determined that there is no significant likelihood of removal in the reasonably foreseeable future.").

The Court DENIES WITHOUT PREJUDICE this part of the Petition.

**B. Third-Country Removal**

Petitioner claims if ICE does not succeed in removing him to Vietnam, they may attempt to remove him to a third country under a policy of removal that violates the Fifth Amendment, the Convention Against Torture, and implementing regulations. Pet. at 10. Petitioner notes that a July 9, 2025 ICE Memo allows removal of a noncitizen to a third country with no notice or an opportunity to be heard if the country has given credible "assurances" that the removed persons will not be persecuted or tortured. Pet. at 5; ECF No. 1-3. The memo also states that even without assurances, third-country removal can occur with twenty-four hours' notice—or as little as six hours if the noncitizen is given an opportunity to speak with an attorney prior to removal—and the government "will not affirmatively ask whether the alien is afraid of being removed to the country of removal." ECF No. 1-3 at 2 (emphasis in original).

Respondents contend that there is no evidence to support Petitioner's claim that ICE will attempt to remove him to a third country. ECF No. 4 at 6.

"ICE may not remove a noncitizen to a country if the noncitizen's life or freedom would be threatened in that country because of the noncitizen's race, religion, nationality, membership in a particular social group, or political opinion." *See Aden v. Nielsen*, 409 F. Supp. 3d 998, 1007 (W.D. Wash. 2019) (citing 8 U.S.C. § 1231(b)(3)). "If the noncitizen expresses fear of persecution or harm upon return to any of the countries designated by the

[immigration judge], the [immigration judge] must inform the noncitizen that he or she may apply for asylum, withholding of removal, or relief under the Convention Against Torture." *Id.* (citing 8 C.F.R. § 1240.11(c)(1)). "[B]oth the due process clause and the governing statute place the burden on the government . . . to provide a meaningful opportunity to be heard on asylum and withholding claims." *Nguyen v. Scott*, 796 F. Supp. 3d 703, 727 (W.D. Wash. 2025) (quoting *Aden*, 409 F. Supp. 3d at 1010 (first alteration in original)). "Failing to notify individuals who are subject to deportation that they have the right to apply for asylum in the United States and for withholding of deportation to the country to which they will be deported violates both INS regulations and the constitutional right to due process." *Andriasian v. I.N.S.*, 180 F.3d 1033, 1041 (9th Cir. 1999). "In the context of country of removal designations, last minute orders of removal to a country may violate due process if an immigrant was not provided an opportunity to address his fear of persecution in that country." *Najjar v. Lynch*, 630 F. App'x 724 (9th Cir. 2016).

This Court agrees with the other courts in the Ninth Circuit who have held that the policies provided in the July 9, 2025 ICE memo violate due process and Ninth Circuit precedent. *See, e.g.*, *Giebashvili v. Noem*, No. 25-CV-3432-BJC-VET, 2026 WL 114422, at *3 (S.D. Cal. Jan. 15, 2026) (collecting cases); *Azzo v. Noem*, No. 3:25-CV-03122-RBM-BJW, 2025 WL 3535208, at *7 (S.D. Cal. Dec. 10, 2025) (citation omitted); *Vu v. Noem*, No. 1:25-CV-01366-KES-SKO (HC), 2025 WL 3114341, at *9 (E.D. Cal. Nov. 6, 2025) (collecting cases); *Nguyen v. Scott*, 796 F. Supp. 3d 703, 728–29 (W.D. Wash. 2025); *see also A.A.R.P. v. Trump*, 605 U.S. 91, 95 (2025) ("[N]otice roughly 24 hours before removal, devoid of information about how to exercise due process rights to contest that removal, surely does not pass muster."). Respondents do not deny that the procedures in the memo are currently being enforced. The current procedure does not inform an individual subject to removal of his right to apply for withholding of deportation or of the opportunity to present any fear of persecution or harm upon return to the designated country; may provide no notice or opportunity to be heard if the United States receives certain assurances from the receiving country; and provides notice only twenty-four hours

or less prior to removal. As such, the policies provided in the ICE memo, if implemented without further procedures, would violate the noncitizen's due process rights. *See A.A.R.P.*, 605 U.S. at 95; *Andriasian*, 180 F.3d at 1041.

The Court GRANTS this part of the Petition.

## IV. CONCLUSION

Based on the above, the Court **ORDERS** as follows:

1. The Petition for Writ of Habeas Corpus is **GRANTED IN PART AND DENIED IN PART**.

2. Respondents are **ENJOINED** from removing Petitioner to a third country unless they adhere to the following procedures:

   a. provide written notice to Petitioner, in a language he can understand, and to his counsel;

   b. provide Petitioner a minimum of <u>ten days</u> to raise a fear-based claim for CAT protection prior to removal;

   c. if Petitioner demonstrates reasonable fear of removal to the country, Respondents must move to reopen Petitioner's immigration proceedings;

   d. if Petitioner is not found to have demonstrated a reasonable fear of removal to the country, Respondents must provide a meaningful opportunity, and a minimum of <u>fifteen days</u> for Petitioner to seek reopening of his immigration proceedings.

3. The Clerk of Court shall close this case.

**IT IS SO ORDERED.**

Dated: August 13, 2026

Honorable Linda Lopez
United States District Judge